THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* RAMÓN CORTÉS CALERO, Defendant and Appellant.

No. CR-70-5.     Decided March 3, 1971.

*Ángel Viera Martínez* for appellant. *Gilberto Gierbolini, Solicitor General,* and *Héctor R. Orlandi Gómez, Assistant Solicitor General,* for The People.

Mr. Justice Pérez Pimentel delivered the opinion of the Court.

The prosecuting attorney filed four informations against appellant for the offense of involuntary manslaughter as a result of having caused the death of four persons while driving a motor vehicle.

The cases were jointly heard before the same jury. He was acquitted in three of the cases and found guilty in the other. The court sentenced him to two (2) years in jail and suspended his driver's license for a period of five (5) years.

He assigns as first error the fact that the court allowed "that witnesses for the prosecution who were not in a position and in circumstances of doing so, testify on their appraisal of

the speed at which the vehicle which had the accident ran, the speed being the main act of negligence upon which the informations are based."

It must be made clear that besides the excessive speed, there were other acts of negligence charged in the information, which were stated thus:

". . . Because the aforementioned defendant, Ramón Cortés Calero, on July 11, 1963, at kilometer 76, hectometer 7, of highway number two, Miramar Avenue in Arecibo, Puerto Rico . . . there and then, illegally, willfully, and criminally, without observing due caution and circumspection and because of his recklessness and carelessness while driving a motor vehicle—a 1963 Volkswagen automobile, license plates No. 822-636—at an exaggerated speed, without reducing its speed at any time, without blowing a horn or sounding any type of alarm device and without taking into consideration the traffic and the use of the thoroughfare along which he was going, and because of his carelessness, incompetence, and recklessness in driving said vehicle, ran over a group of more than ten persons who were standing on the edge or on the area of the road, among them, Víctor Soto González, causing the death of said person." (Solicitor General's Report, p. 4.)

█ The Penal Code labels manslaughter as involuntary when it occurs in the commission of an unlawful act, not amounting to felony; or in the commission of a lawful act which might produce death in an unlawful manner, or without due caution and circumspection. Section 203 of the Penal Code (33 L.P.R.A. § 635).

█ As we have seen in the information, defendant is charged with the commission of several unlawful acts which do not amount to felony, while driving a motor vehicle along a thoroughfare, such as driving at excessive speed, not blowing the horn or sounding any type of alarm device, not taking into consideration the traffic and use of the highway at the moment of the accident, and driving the vehicle in an incompetent and reckless manner, without due caution and circumspection.

These unlawful acts having been proved, as revealed by the evidence in the instant case, or any of them having been proved, the offense of involuntary manslaughter is established. *People* v. *Matos Pretto*, 93 P.R.R. 111 (1966); *cf. People* v. *Negrón*, 79 P.R.R. 279 (1956).

The evidence, correctly summarized by the Solicitor General, showed that the accident took place "on the highway leading from the town of Arecibo towards the town of Hatillo. While some people were holding a young man who had tried to steal a truck which was parked at the edge of said highway, another group approached with the intention of protecting the youth. The two groups joined in a fight, thing which attracted other spectators, agglomerating about twenty or twenty-five individuals, as a whole. While the latter were occupying part of the pavement of one of the two highway lanes near the above-mentioned truck, appellant approached in his vehicle and ran into them. As a result thereof, four of those persons died and more than ten were wounded."

"The evidence revealed that the accident took place at about nine forty-five in the evening. At the scene of the accident the road is straight, it is paved thirty-three feet wide, and it is lighted in a good straight tract along one of its sides. (See The People's Exhibits from No. 1 to 1-i.) Along that tract the speed was limited to a maximum of thirty-five miles per hour. (Tr. Ev. 519.) At no time did appellant blow his horn or apply the brakes of his vehicle. With the collision the bodies of his victims were lifted into the air, falling later scattered over the pavement along a sixty-foot stretch. Two of the victims who died instantly fell over the front part of the vehicle. One of them went head first through the front glass and the upper part of his body fell on the driver's seat. In that condition the vehicle kept running and it did not stop until it settled over some stones which were piled on the left edge of the road at a distance of some one-hundred and fifty feet from the place of the accident. When the vehicle finally came to a stop, appellant was 'half stunned' with the upper part of his body resting on the steering wheel. At that moment appellant denied that he was the driver of the vehicle

(Tr. Ev. 572–577) ; he also denied it at the Municipal Hospital (Tr. Ev. 752). Finally he admitted it, saying that he had denied it earlier fearing reprisals. (Tr. Ev. 754–755.)" (Solicitor General's Report, p. 3.)

Two witnesses for the prosecution testified in regard to the speed of defendant's vehicle. Blanca Miguelina Olmo widow of Correa testified that the car (referring to the vehicle which caused the deaths) was coming "very fast, at more than 60 miles." She explained the 60 miles on the grounds of her experience traveling in automobiles. She said that she saw the lights of the vehicle which was approaching at an approximate distance of 125 meters and noted that the headlights got nearer "very fast." A driver having more than 10 years of experience saw that the vehicle was coming "rather fast" from Hatillo towards Arecibo; that the lights increased rapidly; that his statement "rather fast" in speed terms meant over 60 or 70 miles and that for him that is the same as "excessively fast."

■ These testimonies in regard to the speed of the vehicle driven by defendant were admissible in evidence. We are dealing with two persons of common intelligence who could estimate, although not with mathematical accuracy, as it was not to be expected, the aforementioned speed when the accident took place, considering it as "rather fast"; and "excessively fast." *People* v. *Rivera,* 79 P.R.R. 697 (1956) ; *People* v. *Cruz,* 59 P.R.R. 569 (1941) ; *People* v. *Pereira,* 49 P.R.R. 869 (1936) ; *Torres* v. *Vidal,* 28 P.R.R. 915 (1920) ; 2 Jones, Evidence, § 407 (1958 ed.) ; VII Wigmore, Evidence, § 1977; 2 Wharton, Criminal Evidence, § 553 (12th ed.).

It was incumbent only upon the jury to accord to those two testimonies concerning the speed of the vehicle, the weight which they thought they deserved. *People* v. *Pereira, supra.*

■ Irrespectively of the two already discussed testimonies, the excessive and exaggerated speed at which defendant was driving his vehicle was eloquently established by the con-

sequences of the accident (4 dead and more than 10 persons injured), and by these so tragic as well as dramatic events; human bodies which are thrown into the air by the collision and fall all scattered over the pavement of the highway along a sixty-foot stretch; lifeless human bodies which fall on the front part of the vehicle; a body which pierces the front glass of the vehicle with his head and falls halfway on the driver's seat; a vehicle which after taking 4 lives and injuring so many persons, kept on going for about 150 feet more until it stops on some stones piled at the edge of the road. *People* v. *Ortiz*, 86 P.R.R. 431 (1962); *People* v. *Vega Santos*, 88 P.R.R. 264 (1963); *People* v. *Olmo*, 89 P.R.R. 80 (1963).

■ The second and last error assigned is that the "verdict of guilty is contrary to, and inconsistent with, the three verdicts and with the evidence admitted."

The error lacks merit. The contention as to the inconsistency of the verdicts has been repeatedly decided against appellant. *People* v. *Quiñones*, Cr. 69-147, judgment of June 1, 1970; *People* v. *Santiago González*, Cr. 68-248, judgment of December 3, 1969; *People* v. *Feliciano Rivera*, judgment of May 4, 1969; *People* v. *Negrón*, 73 P.R.R. 513 (1952). See, also, *Dunn* v. *United States*, 284 U.S. 390; 76 L.Ed. 356; 18 A.L.R.3d 259; 81 A.L.R.2d 866.

For the foregoing reasons, the judgment appealed from will be affirmed.