810 F.2d 203
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Victor Leonard VESAY, Defendant-Appellant.
 No. 85-6056.
 United States Court of Appeals, Sixth Circuit.
 Nov. 25, 1986.
 
 Before MERRITT, KRUPANSKY and RYAN, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 Defendant-Appellant Vesay appeals his conviction of 16 counts of mail fraud under 18 U.S.C. § 1341. He contends (1) that his acquittal on Count 1 and conviction on Counts 2-17 of the indictment were so inconsistent and illogical as to require reversal, and (2) that his incidental and collateral use of the mails was insufficient to bring his actions within the scope of the federal mail fraud statute.
 
 
 2
 We affirm defendant's convictions.
 
 I.
 
 3
 In April of 1981, Vesay entered into an oral agreement with a representative of Disabled American Veterans (DAV) whereby he was to solicit donations and advertising for a DAV newspaper in return for a substantial share of all funds collected. Over the course of the following year, Vesay exploited this arrangement by mailing misstated reports of his activities and a portion of the funds collected to the DAV while arranging with a number of "sales agents" to mail funds directly to Vesay himself. Some of these funds were deposited directly into an unauthorized bank account; a portion of the funds was eventually transferred into Vesay's personal account.
 
 
 4
 In October of 1981, the oral agreement under which Vesay had operated was terminated. Vesay, however, continued his solicitation as before, except that no funds were forwarded to the DAV after that time. In March of 1982, Vesay's activities came to an end when a DAV representative froze what little funds were left in the accounts Vesay had been using to launder DAV donations and sales receipts.
 
 
 5
 In April of 1985, a grand jury returned a 17-count indictment against Vesay based on these activities. Paragraphs 1-15 of Count 1 of the indictment detailed allegations of a fraudulent scheme and of the purposeful use of the United States Postal Service to carry out essential elements of this scheme. Paragraph 16 detailed a particular instance of Vesay's use of the mails, the mailing of 16 checks to the DAV on November 9, 1981. The remaining counts realleged the essential allegations of paragraphs 1-15 of Count 1, incorporating those allegations by reference. Each count then detailed a separate instance of Vesay's use of the mails to further his scheme.
 
 
 6
 Because of a clerical error, the original indictment was numbered Counts 1-18, but there was no Count 12. Once the error was discovered, the court ordered that the indictment be renumbered 1-17.
 
 
 7
 A jury found Vesay not guilty as to Count 1, but guilty as to Counts 2-17. Vesay's motions in arrest of judgment and for acquittal notwithstanding the verdict were denied by the trial court, and this appeal followed.
 
 II.
 
 8
 Vesay first argues that it was reversibly inconsistent and illogical for the jury to acquit on Count 1 and convict on the other counts. This claim is expressed in two arguments. One suggests that, by acquitting on Count 1, the only count that spelled out two of the three elements of the offense charged, the jury found for the defendant on those two elements and thus could not consistently have found against the defendant on those same two elements, based upon the exact same evidence, for the purposes of the other counts. The second form of the argument is that there is nothing peculiar about Count 1 that would justify a different result than that arrived at with regard to the other counts, because the various counts differed only as to the dates upon which various materials were mailed.
 
 
 9
 We note first of all that one possible explanation for the jury's behavior may have been continuing confusion over the faulty numbering in the indictment.
 
 
 10
 More to the point, the jury's conduct was not, strictly speaking, illogical or inconsistent. Acquittal on Count 1 may simply have reflected the jury's finding that Vesay's act of mailing 16 checks to the DAV on November 9, 1981, had not been proven beyond a reasonable doubt, whereas the other mailings detailed in the remaining counts had been so proven. To acquit, the jury need not have found for the defendant on all three elements of the offense. Thus, the portion of Count 1 that was realleged in the remaining counts may have been treated consistently in all counts. While the evidence pertaining to the November 9 mailing alleged in Count 1 is not of a different kind from the other evidence, logic does not forbid a different finding as to that evidence.
 
 
 11
 Most importantly, the law cited by Vesay is uniformly inapplicable. Fed.R.Crim.P. 7(c)(1) expressly provides that "Allegations made in one count may be incorporated by reference in another count" and, as the Supreme Court has held: "Consistency in the verdict is not necessary. Each count in an indictment is regarded as if it were a separate indictment." Dunn v. United States, 284 U.S. 390, 393 (1932). Thus, even if the verdict in this case had been inconsistent, the law is settled that such inconsistency does not constitute reversible error.
 
 
 12
 "The most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt. We interpret the acquittal as no more than their assumption of a power which they had no right to exercise, but to which they were disposed through lenity."
 
 
 13
 * * *
 
 
 14
 "That the verdict may have been the result of compromise, or of a mistake on the part of the jury, is possible. But verdicts cannot be upset by speculation or inquiry into such matters."
 
 
 15
 Id. at 393-94 (citations omitted).
 
 
 16
 Vesay's first argument is without merit.
 
 III.
 
 17
 Vesay also argues that his mailings to the DAV in accordance with the oral agreement were not fraudulent and that the mailings alleged to have been made after the agreement ended postdated his fraudulent scheme in that, in the absence of an agreement, no funds were owed to the DAV. Therefore, there was no use of the mail as an essential part of a scheme to defraud, and no mail fraud under federal law.
 
 
 18
 Vesay cites Parr v. United States, 363 U.S. 370 (1960), in support of this argument. Parr held that the use of the mails to collect school taxes did not fall within the scope of the mail fraud statute, even though there was intent to steal a portion of the tax monies collected. In Parr, however, the most telling fact was that the mailings were not only completely legal, and not shown to have been inflated or misused, but were required to be issued by state law. The mailings in this case were required only by Vesay's scheme, which the jury found to be fraudulent.
 
 
 19
 Even assuming that Vesay's mailings to the DAV were themselves not fraudulent, they "contributed to the temporary success of the fraud," United States v. Brown, 709 F.2d 14, 16 (6th Cir.1983), and were an essential part of the scheme. Even assuming that the use of the mails was not an essential element of this scheme, the mail fraud statute requires only that the mails be used "incident to an essential part of the scheme." Pereira v. United States, 347 U.S. 1, 8 (1954). The mailings described in the indictment were at least that.
 
 
 20
 Furthermore, the mailings from October, 1981, onward were all within the time frame of the scheme described in the indictment and proven at trial. There is no question but that the fraudulent nature of Vesay's scheme was not affected by the DAV's instruction to him to cease soliciting funds in its name, especially in view of the fact that he did not follow this instruction.
 
 
 21
 The use of the mails shown in this case more than satisfies the requirements of 18 U.S.C. § 1341.
 
 
 22
 AFFIRMED.